UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 16-0152 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| DAVID BRIAN BULLOCK | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed by Defendant David Brian Bullock ("Bullock"). Record Document 29. Bullock argues that his age and medical conditions, which make him susceptible to complications from COVID-19, constitute extraordinary and compelling circumstances justifying a reduction of sentence. The Government opposes Bullock's motion and contends he is not entitled to any relief. Record Document 31. For the following reasons, Bullock's motion [Record Document 29] is **DENIED**.

## Background

On September 14, 2016, Bullock pleaded guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Record Documents 1 & 23. With a total offense level of 29 and criminal history category of VI, Bullock's Guideline range was 151 to 188 months. Record Document 24 at 16. The Court sentenced Bullock to 151 months imprisonment and five years of supervised release. Record Document 27 at 2-3. The Court imposed a sentence at the bottom of Bullock's Guideline range based on the 18 U.S.C. § 3553(a) factors pertaining to his criminal history, personal characteristics, and involvement in the offense. *See* Record Document 28 at 4.

In the instant motion, Bullock contends he is eligible for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on two things[1]: his age, and his medical conditions including his obesity, high blood pressure, high cholesterol, history of smoking, and detached retina. Record Document 29 at 1. Bullock argues that his medical conditions make him susceptible to contracting COVID-19. *See id.* He also argues that he has not received proper care for his detached retina because of the limited medical resources available amidst the COVID-19 pandemic. *See id.* Bullock's motion further submits that he was released to home confinement on July 20, 2020, pursuant to the CARES Act, and requests the Court "find him suitable for placement on home confinement in a different location." *See id.* at 2.

In its Opposition, the Government concedes that Bullock's obesity, and the associated risk of complications from COVID-19, constitutes an extraordinary and compelling circumstance. *See* Record Document 31 at 1, 7. However, the Government argues that Bullock's motion should be denied based on the 18 U.S.C. § 3553(a) factors. *See id.* at 8-9. According to the Government, Bullock would pose a danger to the community if released because he has "repeatedly engaged in fraud, drug trafficking, theft, absconding, burglary, etc." *Id.* at 9-10.

## Law & Analysis

The Court first observes that the substantive relief Bullock seeks is an order transferring him to home confinement in a different location. Bullock's motion states that

---

[1] Bullock also cites the non-violent nature of his offenses. However, the nature of one's offense is not a ground for relief under 18 U.S.C. § 3582(c)(1)(A)(i). *See* U.S.S.G. § 1B1.13(b).

2

he was already put on home confinement, but his placement was inadequate. *See* Record Document 29 at 2. Since Bullock's motion was filed, Bullock has been removed from home confinement and is now housed at Coleman Low FCI.[2]

To the extent Bullock requests the Court grant him relief by ordering he be moved to home confinement, the Court does not have the authority to do so. *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 741 (5th Cir. 2020). "[R]elease to home confinement is a discretionary decision left to the Attorney General and the BOP" and courts cannot review the failure to release an inmate to home confinement. *Id.* To the extent Bullock requests he be moved to a different location for home confinement, Bullock is no longer on home confinement and his relevant request is therefore moot.

While Bullock is not eligible for relief as to his requests regarding home confinement, Bullock is a *pro se* litigant and his filings are entitled to the "benefit of liberal construction." *See Hernandez v. Thaler*, 630 F.3d 420, 426-27 (5th Cir. 2011). Therefore, the Court also considers whether Bullock is entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] *See Inmate Locator*, BOP, https://www.bop.gov/inmateloc/.

On October 21, 2024, the Court received a letter from Bullock stating that he had been removed from his halfway home and returned to a Bureau of Prisons ("BOP") facility. *See* Record Document 37. Bullock requested that he be transferred to a different BOP facility. *See id.* The Court denied the motion, explaining it did not have jurisdiction to designate his placement. Record Document 38.

### I.  Exhaustion of Remedies

Historically, only the Director of the Bureau of Prisons ("BOP") could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018, however, a court may consider compassionate release motions directly from prisoners. 18 U.S.C. § 3582(c)(1)(A). But before a prisoner pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time he files his request with the warden. *Id.*

The administrative exhaustion provision of 18 U.S.C. § 3582(c)(1)(A) is set out in mandatory terms. The district court can only modify a sentence after the defendant has exhausted administrative remedies. *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020). This mandatory language includes no exceptions, equitable or otherwise. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) ("Mandatory exhaustion regimes brook no exceptions.") (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)); *see also United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

In his motion, Bullock contends he wrote to the warden(s) of his facility requesting compassionate release and his requests were denied. *See* Record Document 29 at 1. The Government has not challenged Bullock's purported exhaustion. *See generally* Record Document 31. Therefore, the Court will consider whether Bullock presents extraordinary and compelling circumstances justifying relief.

## II. Extraordinary and Compelling Circumstances

### A. Medical Conditions

While a court generally "may not modify a term of imprisonment once it has been imposed," there are several exceptions. 18 U.S.C. § 3582(c). One exception allows a court to reduce an inmate's sentence when the inmate provides "extraordinary and compelling reasons" to justify a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The inmate bears the burden of showing why a reduction is justified. *See United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

To assist in determining what constitutes an extraordinary or compelling reason, the Sentencing Commission provides a blueprint that elucidates circumstances that may justify reducing a prison term. Prior to November 1, 2023, the Guidelines outlined the following four categories for district courts to consider: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; or (4) other reasons. U.S.S.G. § 1B1.13 cmt. 1 (2021). The Fifth Circuit previously held that those four categories were not binding; they served as a guide to help courts analyze whether they should grant a sentence reduction. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

On November 1, 2023, the United States Sentencing Commission amended the Sentencing Guidelines to provide additional instruction concerning compassionate release. For the first time since the First Step Act was passed, the Commission outlined specific reasons that would be considered "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A)(i). The six categories outlined in the sentencing guidelines are: (1)

defendant's medical condition; (2) defendant's age; (3) family circumstances; (4) whether defendant has been a victim of abuse during custody; (5) other reasons; and (6) an extraordinarily long sentence. U.S.S.G. § 1B1.13(b).[3]

Prior to the November 1, 2023 Sentencing Guideline amendments, district courts evaluating claims for compassionate release based on COVID-19 were left to engage in a highly fact-intensive, totality of the circumstances analysis. *See, e.g., United States v. Wright*, No. 16-CV-0214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant."). But even then, it was clear to district courts that the spread of COVID-19 and the conditions of confinement in jail, alone, were not sufficient grounds to justify a finding of extraordinary and compelling circumstances. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."). As the Fifth Circuit explained, district courts had broad discretion in evaluating COVID-19 compassionate release claims, even where a petitioner established a severe health condition that put them at serious risk of complication from COVID-19. *See id.* at 434-35. It also noted that when courts did grant compassionate release based on risk of COVID-19 complications, they "largely [did] so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Id.*

---

[3] This Court understands that the revised Sentencing Guidelines apply to this motion. *See United States v. Jean*, 108 F.4th 275, 279 n.4 (5th Cir. 2024) (petition for rehearing en banc filed Sept. 18, 2024) ("For motions brought after November 1, 2023, the Sentencing Commission's November 1, 2023 Amendments will provide the starting point.").

The Sentencing Commission has incorporated several factors into the Guidelines that courts considered during the COVID-19 pandemic to assess whether a prisoner presented extraordinary and compelling circumstances. The Guidelines now state that extraordinary and compelling circumstances exist based on the prisoner's medical condition(s) if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).[4]

The Government's Opposition concedes that Bullock's obesity, which puts him at increased risk of complications from COVID-19, constitutes an extraordinary and compelling circumstance. *See* Record Document 31 at 1, 7. While the Court would typically give this concession great weight, the Government conceded this point based on the Sentencing Guidelines in effect at the time of its Opposition. Since the Government filed its Opposition, district courts have been provided with the COVID-related

---

[4] The Guidelines also provide for other medical circumstances that may constitute extraordinary and compelling circumstances including a terminal illness, serious physical or medical condition, or condition that requires long-term or specialized medical care. *See* U.S.S.G. § 1B1.13(b)(1).

amendments to the Sentencing Guidelines, which give guidance on how to navigate defendants' COVID-related compassionate release claims.

In accordance with this new guidance, the Court finds that Bullock does not present an extraordinary and compelling circumstance justifying relief. Bullock is not housed in a correctional facility currently at risk of an infectious disease outbreak and/or ongoing public health emergency. The COVID-19 public health emergency expired in May 2023. Press Release, HHS Secretary Xavier Becerra, Secretary, Dep't Health & Hum. Servs., Statement on End of the COVID-19 Public Health Emergency, (May 11, 2023). There is no evidence to show that the correctional facility where Bullock is housed, Coleman Low FCI, has an ongoing outbreak of infectious disease.[5] While the Court notes Bullock does have several health conditions, including high blood pressure and obesity, which may pose some risk of complications from COVID-19, those diagnoses themselves are insufficient to show that extraordinary and compelling medical circumstances exist such that relief is justified based on the current prison conditions.

Bullock also contends his detached retina constitutes an extraordinary and compelling circumstance justifying relief because he was unable to see a specialist due to the limited medical resources available at during the COVID-19 pandemic. *See* Record Document 29 at 1. However, there is no evidence that interruptions to Bullock's eye care have continued after the COVID-19 public health emergency ended.

---

[5] Data on rates of COVID-19 in Bureau of Prisons ("BOP") facilities is no longer made publicly available by the BOP. Bullock presents no evidence to support that there is currently any outbreak of COVID-19 at his facility.

Relevant to Bullock's claim that he could not see a specialist for his retinal detachment, the Sentencing Guidelines provide that a defendant can establish an extraordinary and compelling circumstance based on medical condition where the defendant is "suffering from a serious functional impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration of health or death." U.S.S.G. § 1B1.12(b)(1)(B), (C). However, Bullock does not provide any details about his condition, how it poses an impairment, what care is needed, or the consequences of not getting that care. *See* Record Document 29 at 1. The only argument or information Bullock provides regarding his detached retina is his one-sentence assertion that he lacked access to a specialist during the COVID-19 pandemic. The Court cannot find an extraordinary and compelling circumstance exists based on that information alone.

Therefore, Bullock has not presented any medical-related extraordinary and compelling circumstance that justifies relief.

**B. Age**

Bullock also contends he is eligible for relief based on his age. Record Document 29 at 1. The Sentencing Guidelines provide that a sentence reduction may be warranted based on the Defendant's age where: "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of

imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Bullock is 63 years old and therefore not entitled to relief under this provision. Therefore, Bullock has not established any extraordinary and compelling circumstance justifying a reduction of sentence.

## Conclusion

For the reasons assigned herein, Bullock's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Record Document 29] is hereby **DENIED**.

**THUS DONE AND SIGNED** this 3rd day of April, 2025.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE